UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MUSS DEVELOPMENT, LLC, TISHMAN
CONSTRUCTION CORP. OF NEW YORK, and
FLUSHING TOWN CENTER III, L.P.,

                  Plaintiffs,                  **MEMORANDUM & ORDER**

                  - against -                  13 CV 4848 (RJD) (MDG)

NATIONWIDE INSURANCE COMPANY,

                  Defendant.
------------------------------------------------------------------ x
NATIONWIDE INSURANCE COMPANY,

                  Third-Party Plaintiff,

                  - against -

ILLINOIS NATIONAL INSURANCE COMPANY,

                  Third-Party Defendant.
------------------------------------------------------------------ x
DEARIE, District Judge

      This is an insurance coverage dispute in connection with a bodily injury action brought by the employee of an electrical subcontractor. Plaintiffs, the construction managers and owner of a construction site, seek declaratory judgment that they are covered as additional insureds under the electrical subcontractor's insurance policy. Defendant and third-party plaintiff, the electrical subcontractor's insurer, argues that primary coverage should be provided by plaintiffs' insurer, the third-party defendant. All parties have moved for summary or declaratory judgment. For the reasons discussed below, the Court grants the motions in part.

BACKGROUND

A.  The Underlying Bodily Injury Action and Insurance Coverage Dispute

John Mustakis, the plaintiff in the underlying bodily injury action, was employed by Urban Power & Lighting, Inc. ("Urban") to work as an electrician on a construction site at 40-22 College Point Boulevard, Flushing, New York (the "Construction Site"). Pls.' Local Rule 56.1 Statement of Material Facts, ECF No. 47-1 at ¶¶ 1, 4, 16 [hereinafter Pls.' 56.1 Statement]. The Construction Site was owned by Flushing Town Center III, L.P. ("Flushing") and managed by Muss Development Corp. ("Muss") and Tishman Construction Corp. of New York ("Tishman"). Id. at ¶¶ 16-17, 19.

Urban's work at the Construction Site was insured, at least in part, through an insurance policy (the "Nationwide Policy") issued by Nationwide Insurance Company ("Nationwide"). Joint Exhibits for the Parties' Motions for Summary Judgment ("Joint Exs."), ECF No. 43, Ex. G (certified copy of Nationwide Policy) [hereinafter Nationwide Policy]. Flushing, Muss, and other eligible contractors and subcontractors at the Construction Site were insured, at least in part, through Flushing's commercial general liability owner-controlled insurance program (the "Illinois National OCIP"), issued by Illinois National Insurance Company ("Illinois National"). Pls.' 56.1 Statement at ¶ 21; Joint Exs., Ex. F (certified copy of Illinois National OCIP) [hereinafter Illinois Nat'l OCIP].

On February 24, 2010, Mustakis slipped and fell at the Construction Site, injuring his left rotator cuff. Id. at ¶¶ 2-3, 5, 14-15; Joint Exs., Ex. O, 73:2-5, 74:6-12 (Mustakis deposition). One year later, Mustakis initiated a state court action against Flushing, Muss, and Tishman, seeking damages for his injuries. Joint Exs., Ex. B at 17 (Mustakis amended complaint). Urban's insurer, Nationwide, originally acknowledged that it was obligated to defend Muss in the

underlying bodily injury action as an "additional insured" under the Nationwide Policy. Id. at Ex. S (letter dated Nov. 9, 2011 from Nationwide to an affiliate of Illinois National). Nationwide later argued, however, that primary coverage should be provided by Flushing's insurer, Illinois National. Id. (letter dated Feb. 2, 2012 from Nationwide to an affiliate of Illinois National).

On July 26, 2013, Flushing, Muss, and Tishman (together, the "Plaintiffs") initiated a state court action against Nationwide, alleging breach of contract and seeking declaratory judgment that Nationwide was obligated to, *inter alia*, "defend and indemnify Plaintiffs" in the underlying bodily injury action as additional insureds under the Nationwide Policy. Joint Exs., Ex. B at 6, 13 (complaint). Shortly thereafter, Nationwide removed the action to this Court. Id. at 1 (notice of removal). On December 6, 2013, Nationwide filed a third-party complaint against Illinois National, also alleging breach of contract and seeking declaratory judgment that Illinois National was obligated to, *inter alia*, "afford primary coverage for the defense and indemnity of" Muss, Flushing, Tishman, and Urban in the underlying bodily injury action "as members of the [Illinois National] OCIP." Joint Exs., Ex. D at 11, 16 (third party complaint).

After discovery, all of the parties moved for summary or declaratory judgment. The primary arguments break down into two main issues: (1) which parties are covered by the Illinois National OCIP and the Nationwide Policy; and (2) to the extent that both policies apply, which policy's coverage is primary and which is excess?

    B.   The Relevant Contracts and Insurance Policies

        1.  *The Muss Construction Management Agreement*

In March of 2007, Flushing and Muss entered into an agreement (the "Muss Construction Management Agreement") for Muss to provide construction management services at the Construction Site. Joint Exs. at Ex. J, ¶ 1.1. Pursuant to this agreement, Muss was to hire and

oversee subcontractors to work on the Construction Site and ensure their compliance with the Illinois National OCIP. Id. at ¶¶ 7.1, 7.3, 15.1, and Ex. B.

2. *The Urban Trade Subcontract*

On February 8, 2007, Muss and Urban entered into a trade subcontract (the "Urban Trade Subcontract") for Urban to undertake certain electrical work at the Construction Site. Pls.' 56.1 Statement at ¶ 18; Joint Exs. at Ex. H [hereinafter Urban Trade Subcontract]. Though not a signatory, Flushing was "deemed a third party beneficiary of the [c]ontract." Urban Trade Subcontract at Art. 19.

Pursuant to the Urban Trade Subcontract, the parties agreed that Urban would indemnify and defend Flushing and Muss against claims arising from Urban's work. Id. at ¶ 10.3. The parties also agreed that Urban's work on the Construction Site would be "insured as set forth in Exhibit E" to the Urban Trade Subcontract. Id. at ¶¶ 10.1-10.2.

Exhibit E, which is incorporated by reference into the contract, contains an insurance manual for the Illinois National OCIP. See id. at ¶ 18.1 (incorporating exhibits) and Ex. E. The first section of the manual states that "[t]he OCIP is an insurance program that insures" Flushing, Muss, and "eligible and enrolled" subcontractors "for [w]ork performed at the [Construction] Site." Id. at Ex. E, § 1, 1. The manual clarifies in that same paragraph that "[c]ertain . . . [s]ubcontractors are excluded from this OCIP." Id. (emphasis removed). And section three of the Illinois National OCIP insurance manual defines "Excluded Parties" to include "[a]ny parties or entities not specifically designated by [Flushing] in its sole discretion, even if otherwise eligible." Id. at § 3, 1.

Section five of the Illinois National OCIP insurance manual specifies that "[s]ubcontractors are required to maintain insurance coverage for the duration of the [c]ontract

4

that protects [Flushing] from liabilities," including for "operations performed by [e]xcluded [p]arties." Id. at § 5, 13. Section four of the manual clarifies the amounts of coverage needed for commercial general liability policies of both enrolled parties and excluded parties. Id. at § 4, 15. And the end of section four contains a note requiring that these policies "name [Flushing], its officials, employees, agents, and any wholly-owned subsidiaries or parent organizations as additional insureds and . . . state that coverage is afforded on a primary and non-contributory basis." Id. at § 4, 17. Additionally, section five requires that excluded parties provide a certificate of insurance that "name[s] [Flushing] as an additional insured on a primary, non-contributory basis, to all liability policies." Id. at § 5, 14. Finally, section eight provides a sample certificate of insurance for policies procured by excluded parties, which contains a list of additional insureds that names both Flushing and Muss. Id. at § 8, Ex. 2.

After entering into the Urban Trade Subcontract, Urban's insurance broker periodically provided Flushing with certificates of liability insurance, including one issued on December 7, 2009, that stated the limits of Urban's commercial general liability coverage under the Nationwide Policy for the next year and provided that Flushing and Muss were "INCLUDED AS ADDITIONAL INSURED WITH RESPECT TO LIABILITY FOR BOTH ON SITE AND OFF SITE WORK AS A CONTRACTUAL OBLIGATION BETWEEN [URBAN] AND THE CERTIFICATE HOLDER . . . ." Joint Exs., Ex. K at 1.

   3. *The Tishman Construction Management Agreement*

As construction progressed, Muss required assistance in performing some of its construction management obligations at the Construction Site. Joint Exs., Ex. Q at 11:16-23, 13:18-24 (deposition of Stephen Liberty, Vice President of Project Control at Muss). In October of 2010, Muss and Tishman entered into an agreement (the "Tishman Construction Management

5

Agreement") for Tishman to assume some of Muss's duties. Joint Exs. at Ex. V. The agreement was given a retroactive effective date of February 5, 2010. Id.

    4. *The Illinois National OCIP*

The coverage provided by the Illinois National OCIP extends to Flushing and other "named insureds," including subcontractors endorsed onto the policy. Illinois Nat'l OCIP at Endorsement, Named Insured, 75188. The schedule of "named insureds" includes Muss but does not include Urban. Id. at Extension Schedule of Named Insureds, MS001. A participant list for the Illinois National OCIP lists Urban as excluded from the policy. Joint Exs., Ex. I at 6.

Coverage under the Illinois National OCIP is subject to limitations where other insurance is available for a covered loss, in which case the policy "is excess over any of the other insurance whether primary, excess, contingent or on any other basis: (1) [u]nless such insurance is specifically purchased to apply as excess of [the Illinois National OCIP], or (2) [Flushing] [is] obligated by contract to provide primary insurance." Illinois Nat'l OCIP, Endorsement, Amendment of Other Insurance, 67265.

    5. *The Nationwide Policy*

The additional insured provision in the Nationwide Policy extends additional insured coverage to "any . . . organization for whom [Urban] [is] performing operations" when the following three conditions are met: (1) "[Urban] and such . . . organization have agreed in writing in a contract or agreement"; (2) "that such . . . organization be added as an additional insured on [Urban's] policy"; and (3) the coverage is requested "with respect to liability for 'bodily injury' . . . arising out of . . . [Urban's] acts or omissions . . . in the performance of [Urban's] ongoing operations for the additional insured . . . ." Nationwide Policy at Endorsement, Additional Insured, CG 2033 0704.

Coverage under the Nationwide Policy is also subject to limitations where other insurance is available for a covered loss, in which case the policy "is excess over . . . [a]ny other primary insurance available to [Urban] covering liability for damages arising out of the premises or operations . . . for which [Urban] ha[s] been added as an additional insured by attachment of an endorsement." Id., Section III, § 4 (Other Insurance), CG 0001 1207.

## DISCUSSION

Summary judgment is appropriate where "the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and citation omitted). Under New York law, "[a]s with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . ." Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 37 N.E.3d 78, 80, 25 N.Y.3d 675, 680 (2015) (internal quotation marks and citations omitted). And "[t]he matter of whether the contract is ambiguous is a question of law for the court." Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (collecting cases).

The Declaratory Judgment Act provides that "[i]n a case of *actual controversy* within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). To determine whether an actual controversy exists, the Supreme Court has instructed that the basic question "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

7

declaratory judgment." MedImmune, Inc. v. Genentech, Inc. 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted). "There is no dispute that parties to an insurance contract—the issuer, a named insured or a person claiming to be an insured under the policy—may bring a declaratory judgment action against each other when an actual controversy develops concerning the extent of coverage, the duty to defend, or other issues arising from the insurance contract." Lang v. Hanover Ins. Co., 3 N.Y.3d 350, 353, 820 N.E.3d 855, 857 (2004)). However, "[t]he Declaratory Judgment Act, by its express terms, vests a district court with discretion to exercise jurisdiction over a declaratory action . . . ." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005). Therefore, "[i]n order to decide whether to entertain an action for declaratory judgment," the Second Circuit "ha[s] instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Id. at 389 (citation omitted).

  A. <u>Parties Covered by the Illinois National OCIP and the Nationwide Policy</u>

    1. *Illinois National OCIP*

First, the Court grants Illinois National's motion for declaratory judgment that Urban is not entitled to coverage under the Illinois National OCIP. The record contains no evidence that Urban was an insured under the Illinois National OCIP, and Nationwide failed to respond to this issue in its opposition brief.

Second, the Court grants Illinois National's motion to dismiss those portions of Nationwide's declaratory judgment claim that allege that Flushing, Muss, and Tishman are entitled to coverage under the Illinois National OCIP. Here, the record is clear that Flushing, Muss, and Tishman are insureds under the Illinois National OCIP. Illinois National does not

8

dispute this coverage and has assumed their defense in the underlying bodily injury action. Without formally reaching questions of standing and justiciability, on which the Court has some concerns, Flushing, Muss, and Tishman's coverage under the Illinois National OCIP is not contested and a declaration of such coverage is not necessary to a determination of their rights under the Nationwide Policy. Accordingly, the Court declines to make a declaration to that effect. There is a justiciable controversy, however, as to whether the coverage owed to Flushing, Muss, and Tishman under the Illinois National OCIP is primary or excess to any coverage owed under the Nationwide Policy, which the Court later decides.

2. *Nationwide Policy*

The record is clear that Urban is insured under the Nationwide Policy, and the parties do not dispute this fact. The parties do disagree as to whether Flushing, Muss, and Tishman are covered under the Nationwide Policy as additional insureds. For the reasons discussed below, the Court determines that Muss *is* covered as an additional insured under the Nationwide Policy, Tishman *is not* covered, and questions of material fact prevent a determination as to Flushing at this stage.

a. Policy Requirements

Plaintiffs, as "[t]he party claiming insurance coverage[,] bear[] the burden of proving entitlement . . . and [are] not entitled to coverage if not named as . . . additional insured[s] on the face of the policy." Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 33 A.D.3d 570, 570-71, 824 N.Y.S.2d 230, 232 (1st Dep't 2006) (citations omitted). The additional insured provision in the Nationwide Policy extends coverage to "any . . . organization for whom [Urban] [is] performing operations" when the following three conditions are met: (1) "[Urban] and such . . . organization have agreed in writing in a contract or agreement"; (2) "that such . . .

9

organization be added as an additional insured on [Urban's] policy"; and (3) the coverage is requested "with respect to liability for 'bodily injury' . . . arising out of . . . [Urban's] acts or omissions . . . in the performance of [Urban's] ongoing operations for the additional insured . . . ." Only Muss meets all three of these requirements.

First, Nationwide correctly notes that New York courts have interpreted identical additional insured provisions as requiring contractual privity between the insured and *each* organization seeking coverage as an additional insured under the relevant policy. See AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc., 102 A.D.3d 425, 426, 961 N.Y.S.2d 3 (1st Dep't 2013) (interpreting identical language as requiring "a written agreement between the insured and the organization seeking coverage to add that organization as an additional insured"); Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC, No. 10-CV-35 (RJA), 2014 WL 3748545, at *7 (W.D.N.Y. July 29, 2014) (finding similar language "clearly and unambiguously require[d] that the named insured execute a contract with the party seeking coverage as an additional insured").

The only signatories to the Urban Trade Subcontract are Urban and Muss. Therefore, by the plain terms of the Nationwide Policy, Flushing and Tishman are not covered as additional insureds, because they lack privity of contract with Urban. This is so despite the fact that Flushing is named as a third-party beneficiary to the Urban Trade Subcontract, because "this status is insufficient to confer coverage" under additional insured provisions like the one in the Nationwide Policy. Time Warner NY Cable LLC v. Nova Cas. Co., 2013 N.Y. Misc. LEXIS 4138, at *8 (N.Y. Sup. Ct. 2013) (citation omitted); see also Linarello v. City Univ. of New York, 774 N.Y.S.2d 517, 6 A.D.3d 192, 195 (1st Dep't 2004) (finding that even if construction manager were third-party beneficiary of contracts requiring that it be named as additional insured

on subcontractors' insurance policy, "that would simply mean that [construction manager] ha[d] standing to sue" subcontractors for failing to procure insurance as promised). Furthermore, to the extent that Plaintiffs argue Tishman is covered as an assignee of Muss, the record contains no evidence that Urban was notified of any such assignment, which—at any rate—would have necessarily occurred *after* the Mustakis slip-and-fall.

Second, the Urban Trade Subcontract clearly provides that Urban's work on the Construction Site will be "insured as set forth in Exhibit E," the Illinois National OCIP insurance manual, incorporated by reference into the contract. See Carlisle SoHo E. Trust v. Lexington Ins. Co., 49 A.D.3d 272, 852 N.Y.S.2d 118, 119 (1st Dep't 2008) (finding that "[c]lear language in the relevant contract demonstrate[d] the sub-subcontractor's agreement to be bound by the insurance requirements of the subcontract incorporated by reference," which discussed plaintiff's coverage as an additional insured). This manual states in more than one location that Flushing and its agents should be added as additional insureds on the insurance policies of excluded parties, even going so far as to provide a sample certificate of insurance with a list of additional insureds that includes both Flushing and Muss. Therefore, despite Nationwide's arguments to the contrary, the Urban Trade Subcontract is clear and unambiguous that Urban is required to add Muss as an additional insured on the Nationwide Policy.

Third, Plaintiffs have sufficiently established that the coverage is requested "with respect to liability for 'bodily injury' . . . arising out of . . . [Urban's] acts or omissions . . . in the performance of [Urban's] ongoing operations for the additional insured," thereby triggering Nationwide's duty to defend Muss in the underlying bodily injury action. See BP A.C. Corp. v. One Beacon Ins. Grp., 8 N.Y. 3d 708, 714-16, 871 N.E.2d 1128 (2007) (rejecting insurer's argument that similar language "require[d] a determination of liability" in the underlying bodily

11

injury action and finding that "[w]hen the duty to defend is at issue, a liability *alleged* to arise out of [the insured]'s ongoing operations is one 'arising out of' such operations") (emphasis added); see also Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co., -- F. Supp. 3d --, 2015 WL 4720285, at *3-4 (S.D.N.Y. 2015) (finding duty to defend under very similar circumstances). The question of Nationwide's duty to indemnify Muss cannot be resolved without a determination of liability in that underlying action. See Allianz Ins. Co. v. Lerner, 416 F.3d 109, 115 (2d Cir. 2005) ("The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage.").

b. Estoppel

Notwithstanding that Flushing and Tishman are not entitled to additional insured coverage on the face of the Nationwide Policy because they lack privity of contract with Nationwide, Plaintiffs argue that Nationwide should be estopped from denying this coverage for two reasons, collateral estoppel and reliance.

First, Plaintiffs belatedly argue that Nationwide is collaterally estopped from denying their coverage because of a 2014 Kings County New York Supreme Court ruling in Plaintiffs' favor in a factually similar case involving another Urban employee slip-and-fall at the Construction Site. ECF No. 55, Ex. 1 (providing a copy of the order). Timeliness of this argument aside, under New York law, the doctrine of collateral estoppel only applies where (1) "the issue to be decided in the second action [is] identical to an issue necessarily decided in the earlier proceeding" and (2) "the party against whom collateral estoppel is asserted ha[d] a full and fair opportunity to litigate the issue in that earlier proceeding." Hill v. Coca Cola Bottling Co. of New York, 786 F.2d 550, 552 (2d Cir. 1986) (collecting cases). The insurance policy in the earlier case, however, was from a prior year, and the materials from that case provided to the

Court are not sufficient to determine if Nationwide had a full and fair opportunity to litigate the policy language at issue here. Furthermore, Tishman, who is not similarly situated to Flushing and Muss with respect to coverage under the Nationwide Policy, was not a party in the earlier action. Therefore, Nationwide is not collaterally estopped from denying Flushing and Tishman's coverage as additional insureds under the Nationwide Policy.

Second, Plaintiffs argue that their coverage is clearly demonstrated by a certificate of insurance naming both Flushing and Muss as additional insureds under the Nationwide Policy. "New York contract law instructs that, as a general matter, '[a] certificate of insurance is merely evidence of a contract for insurance, not conclusive proof that the contract exists, and not, in and of itself, a contract to insure.'" 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 122 (2d Cir. 2010) (quoting Horn Maint. Corp. v. Aetna Cas. & Sur. Co., 225 A.D.2d 443, 444, 639 N.Y.S.2d 355, 356 (1st Dep't 1996)) (collecting cases). Nevertheless, some New York courts have held that "an insurance company that issues a certificate of insurance naming a particular party as an additional insured may be estopped from denying coverage to that party where the party reasonably relies on the certificate of insurance to its detriment," by, for example, beginning construction work. Sevenson Envtl. Servs., Inc. v. Sirius Am. Ins. Co., 74 A.D.3d 1751, 1753, 902 N.Y.S.2d 279, 281 (4th Dep't 2010); see also Ellicott, 634 F.3d at 122 (noting that the First and Second Departments "ha[ve] been reluctant to find estoppel based on a certificate of insurance," while the Third and Fourth Departments have found estoppel where "the certificate was issued by an agent within the scope of its authority" and "the party seeking coverage reasonably relied on" it) (collecting cases);[1] Chartis Seguros

---

[1] The Second Circuit acknowledged that a primary insured makes the agreements with the additional insureds and is "otherwise best positioned to assure compliance with the conditions of its insurance." Id. at 123. Conversely, the Second Circuit recognized the "reasonable argument"

13

Mexico S.A. de C.V. v. HLI Rail & Rigging, LLC, No. 11-CV-3238 (ALC) (GWG), 2014 WL 988574, at *4 (S.D.N.Y. Mar. 13, 2014) (denying insurer's summary judgment motion in part because party seeking coverage had received a certificate of insurance from insurer's agent).

Here, the certificate of insurance and other parol evidence suggesting intent to cover Flushing and Muss as additional insureds under the Nationwide Policy weigh heavily in favor of estoppel. An essential element of reliance estoppel, however, is proof that the insurance broker who issued the certificate of insurance to Flushing was acting on the authority of Nationwide. See Structure Tone, Inc. v. Nat'l Cas. Co., 130 A.D.3d 405, 406, 13 N.Y.S.3d 52, 53 (1st Dep't 2015) (finding that "any reliance on the certificate of insurance produced by plaintiffs' broker is unavailing, as it is undisputed that no agency agreement existed between [insurer] and the broker"). Yet, the record contains no evidence to establish such a relationship. Therefore, there is an issue of fact as to whether Nationwide is estopped from denying Flushing's coverage as an additional insured under the Nationwide Policy, based upon the certificate of insurance. See Sevenson, 74 A.D.3d at 1753-4 (finding issue of fact as to whether broker was agent of insurer).

Accordingly, on the issue of whether Flushing, Muss, and Tishman are covered under the Nationwide Policy as additional insureds, the Court rules as follows:

(1) questions of material fact preclude the Court from determining whether Flushing is entitled to additional insured coverage under the Nationwide Policy at this stage;

(2) Muss *is* entitled to additional insured coverage under the Nationwide Policy, because the Urban Trade Subcontract required Urban to add Muss as an additional insured on the Nationwide Policy; and

---

that "an insurer has an obligation not to issue false or misleading certificates of insurance . . . if it . . . is aware the parties may rely upon the certificate . . . ." Id. The Second Circuit certified the issue to the Court of Appeals but withdrew the certification when the case settled. 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 232, 233 (2d Cir. 2011).

14

(3) Tishman *is not* entitled to additional insured coverage under the Nationwide Policy, because Tishman lacks privity of contract with Urban.

The question of Nationwide's duty to indemnify cannot be resolved without a determination of liability in the underlying bodily injury action.

B. Primary Coverage vs. Excess Coverage

All parties seek declaratory judgment defining, to the extent that coverage under the Nationwide Policy and the Illinois National OCIP overlap, which policy's coverage is primary and which policy's coverage is excess. "[W]here there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance." Murnane Bldg. Contractors, Inc. v. Zurich Am. Ins. Co., 107 A.D. 3d 674, 676, 966 N.Y.S.2d 486, 488 (2d Dep't 2013) (internal quotation marks and citation omitted) (alteration in original); see also Couch on Insurance (Third Ed.), Chapter 219, Part IV(A)(3) § 219:47 (collecting cases). "This rule is inapplicable," however, "where it clearly distort[s] the plain meaning of the terms of the policies of insurance." Murnane, 107 A.D. 3d at 676, 966 N.Y.S.2d at 488 (internal quotation marks and citation omitted) (second alteration in original); Couch on Insurance (Third Ed.) at § 219:47.

Here, the Illinois National OCIP insurance manual, incorporated into the Urban Trade Subcontract, requires that Flushing and Muss be named as additional insureds under Urban's general commercial liability insurance policy on a "primary and non-contributory" basis. Furthermore, New York case law provides that "coverage for 'additional insureds' [i]s primary coverage unless unambiguously stated otherwise." Pecker Iron Works of New York, Inc. v. Travelers Ins. Co., 99 N.Y.2d 391, 393, 785 N.E.2d 863, 864 (2003). Even if this were not the

15

case, however, the general rule of ratable contribution is inapplicable because the Nationwide Policy provides that its coverage is primary except where there is other primary insurance available, whereas the Illinois National OCIP is excess over any other insurance, including other excess insurance coverage. See Am. Transit Ins. Co. v. Cont'l Cas. Ins. Co., 215 A.D.2d 342, 343-44, 625 N.Y.S.2d 653, 654 (2d Dep't 1995) (declining to apply rule of ratable contribution to insurance policy with other insurance clause similar to the clause in the Illinois National OCIP).

Consequently, coverage provided to Muss as an additional insured under the Nationwide Policy is primary and must be exhausted before the excess coverage provided under the Illinois National OCIP becomes effective.

## CONCLUSION

As discussed above, after considering the parties' motions for summary and declaratory judgment regarding the coverage owed under the Illinois National OCIP and the Nationwide Policy, in connection with the underlying bodily injury action, the Court rules as follows:

(1) Urban is not entitled to coverage under the Illinois National OCIP;

(2) the Court declines to make a declaration as to Flushing, Muss, and Tishman's coverage under the Illinois National OCIP, as this coverage is not contested and a declaration of such coverage is not necessary to a determination of the parties' rights under the Nationwide Policy;

(3) questions of material fact preclude the Court from determining whether Flushing is entitled to additional insured coverage under the Nationwide Policy at this stage;

(4) Muss is entitled to additional insured coverage under the Nationwide Policy and the coverage provided under the Nationwide Policy is primary and must be exhausted

before the excess coverage provided under the Illinois National OCIP becomes effective; and

(5) Tishman is not entitled to additional insured coverage under the Nationwide Policy, because Tishman lacks privity of contract with Urban.

The question of Nationwide's duty to indemnify cannot be resolved without a determination of liability in the underlying bodily injury action.

SO ORDERED.

Dated: Brooklyn, New York
October 20, 2015

/s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge